# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**MICHAEL Z. COOPER,**
**Claimant Below, Petitioner**

**FILED**

March 21, 2018

**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)   No. 17-0975**  (BOR Appeal No. 2051977)
(Claim No. 2017011136)

**CABOT OIL & GAS CORPORATION,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Michael Z. Cooper, by Gregory Prudich, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Cabot Oil & Gas Corporation, by Katherine Arritt, its attorney, filed a timely response.

The issue on appeal is whether a left knee arthroscopy and partial lateral meniscectomy is reasonable and necessary medical treatment for the compensable injury. On February 23, 2017, the claims administrator denied authorization for the proposed surgery. The Office of Judges affirmed the claims administrator in its May 12, 2017, Order. The Order was affirmed by the Board of Review on October 4, 2017. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Cooper, a well operator, injured his left knee on August 4, 2016, when he slipped and twisted his knee while he was weed eating on an incline. He first sought medical treatment on October 17, 2016, when he was diagnosed with a left knee sprain. The claims administrator accepted the claim as compensable for a left knee strain/sprain on November 8, 2016.

A left knee MRI performed on November 8, 2016, revealed normal configuration of the anterior and posterior cruciate ligaments and normal attachment and signal intensity of the medial and lateral ligamentous complex with normal fluid collection around the ligaments. There

1

was no evidence to indicate a bone contusion, displaced fracture, subluxation, ligament injury, or meniscal tear.

On November 15, 2016, Mr. Cooper was treated by Jeff Prichard, PA-C, who noted that Mr. Cooper said his left knee felt unstable. Mr. Prichard diagnosed a left knee sprain and referred Mr. Cooper to see Frederick Morgan, M.D. On November 29, 2016, Mr. Prichard diagnosed sprained left knee, took Mr. Cooper off of work for one month, and referred him to physical therapy.

Prasadarao Mukkamala, M.D., performed an independent medical evaluation on December 21, 2016. Mr. Cooper complained of pain in his left knee with all levels of activity. Dr. Mukkamala noted Mr. Cooper walked with a normal gait. He diagnosed a left knee sprain and opined that no additional medical treatment was needed.

Dr. Morgan treated Mr. Cooper for complaints of left knee pain and swelling on January 16, 2017. Mr. Cooper noted he had been experiencing anterior lateral pain and swelling since he twisted his knee on August 4, 2016. He had been treated conservatively with anti-inflammatory medication, physical therapy, and quadriceps strengthening. An attempted return to work was not successful. Prior to this incident, Mr. Cooper had a 1998 right knee arthroscopy and a 2001 left knee arthroscopy. A left knee MRI revealed significant effusion and a lateral meniscus tear. Dr. Morgan's impression was left knee pain consistent with a lateral meniscal tear. He recommended a partial lateral meniscectomy. In a February 20, 2017, letter to Mr. Cooper's attorney, Dr. Morgan noted Mr. Cooper had been treated conservatively and that an MRI revealed a torn lateral meniscus. Following his evaluation of Mr. Cooper, Dr. Morgan recommended an arthroscopic evaluation of the knee with a partial lateral meniscectomy, which had been denied. Dr. Morgan noted that he had diagnosed a lateral meniscal tear and opined that the tear was due to Mr. Cooper's August 4, 2016, injury. In his opinion, the March 27, 2001, surgery for left knee was totally unrelated to the current meniscal pathology.

On January 30, 2017, Dr. Mukkamala completed a supplemental report in which he stated that Mr. Cooper sustained a soft tissue injury in the form of a sprained left knee on August 4, 2016. Mr. Cooper continued to work after the injury. He had a prior injury and surgery on the left knee in 2001. In Dr. Mukkamala's opinion, the continuing symptoms Mr. Cooper had were related to the "preexisting pathology" and not the August 4, 2016, injury. Dr. Mukkamala opined that it was reasonable for Mr. Cooper to undergo the proposed surgery but that it was not needed as a result of his work injury. On February 23, 2017, the claims administrator denied the request for a left knee arthroscopy with partial lateral meniscectomy.

Jonathan Luchs, M.D., performed an age of injury analysis using the November 8, 2016, MRI film on April 14, 2017. He stated that the original reader of the MRI noted a normal configuration of the knee with intact structures, and Dr. Luchs agreed that there was no evidence of a tear on the film. However, he noted the film showed chronic ganglion degeneration of the anterior cruciate ligament; chronic mild thinning of the patellar apex extending into the medial patellar facet with medial half of trochlear cartilage thinning and chronic softening; and mild

thinning of the inner aspect of the medial femoral condylar cartilage. In his opinion, all of the conditions seen on the MRI were chronic.

Mr. Cooper testified by deposition on April 17, 2017, that he worked as a well operator which entailed walking pipelines, mowing and cleaning locations, and performing maintenance on the wellheads. He was required to squat, kneel, and climb. He worked alone. On August 4, 2016, he was standing on a sloped incline using a weed eater when he slipped, lost his footing, and twisted his left knee. He felt discomfort in the knee at the time but thought he had just tweaked his knee. He filled out an incident report after continued knee pain. He continued to work until November 1, 2016. He returned to work in January of 2017, but was only able to work two days due to his knee pain. He continued to have pain in the middle and back of his knee.

On May 2, 2017, Mr. Cooper underwent a diagnostic arthroscopy of the left knee that included debridement of a partial thickness tear of the anterior cruciate ligament, debridement of the medial femoral condyle, and debridement of the patella. The preoperative diagnosis was chronic left knee pain with possible medial meniscus tear. The postoperative diagnoses included partial thickness tear of the anterior cruciate ligament, grade four chondromalacia of the medial femoral condyle, and grade two and three chondromalacia of the patella.

The Office of Judges affirmed the claims administrator's denial of treatment on May 12, 2017. It determined that the only compensable condition in the claim was a left knee sprain. Mr. Cooper failed to show that the left knee arthroscopy was medically necessary or reasonably required for the treatment of the compensable condition. It found the requested treatment was for the lateral meniscus tear, which was not a compensable condition. It noted that the treating physician could request the condition be added as a compensable condition. The Office of Judges determined the record did not support a finding that the left knee arthroscopy was needed for the left knee sprain. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on October 4, 2017.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The only compensable condition in this claim is the left knee sprain. The proposed surgery is not for the treatment of the left knee sprain. Therefore, the Board of Review was correct to affirm the Office of Judges

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

3

**ISSUED: March 21, 2018**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker